We're going to go on to the next case, and that case is N. Ray Hazelton et al. It's the appeal of the Board of Regents for the University of Wisconsin System. And we'll wait until everyone exits. I'm Jennifer Vandermeuse, and I represent the appellant in this case, the Board of Regents and its University of Wisconsin Stout. Let's start out with jurisdiction. Yes, Your Honor. As a threshold matter, I would like to say that this court has jurisdiction over this case. The district court's order was a final order under Bullard v. Blue Hills Bank because it pertains to a discrete dispute, namely the determination of dischargeability. Now, we know it's a discrete dispute because the order on dischargeability alters the status quo and fix the rights of the parties, namely whether UW Stout could collect and retain the student debt. All right. So, your argument is that we have jurisdiction because the dischargeability issue is a discrete one, not an issue related to the sanctions issue that was remanded. That's correct, Your Honor. But the claim began as a motion for sanctions. Isn't the dischargeability question merely the preliminary issue for determining whether to impose sanctions as essentially a sub-issue of the sanctions question? How can that be said to be a discrete issue rather than a related issue? Yes, Your Honor. We do acknowledge that the motion for sanctions is kind of what arose in this case, but we would say that there's no need to put form over substance, and there are lots of instances where dischargeability is its own discrete dispute. Pre-final discharge. Your argument would have merit if there had not yet been a final discharge order, and the only dispute in question was dischargeability. This is post-final discharge, and the dispute in question is whether the university should be sanctioned for violating the final discharge injunction, and an issue within that dispute is whether the debt was determined. It's the difference between a liability finding and a remedy. Yes, Your Honor. A remedial order. We don't have a remedial order here. We don't know what consequences the university is going to be forced to pay for misjudging the dischargeability issue, and that has yet to be determined by the bankruptcy court pursuant to the district court's remand, so you're premature here. Your Honor, respectfully, we disagree. We think that there is a final order here because the sanctions issue has no bearing on the dischargeability question. Oh, it has a lot to do with it. It certainly does. Well, whether the— Oh, don't make that your argument. Your Honor, it is the state's position that there's jurisdiction over this case. We think that there's nothing more to do with respect to the dispute on dischargeability. The case law that discusses remands for non-ministerial functions is related to remands for issues on different disputes, and there's nothing more to determine as to whether the debt is discharged. The court could decide this question now. We understand that there are concerns. We've briefed that. If the court doesn't have any further questions about the state's position, I would like to move on to the merits. So you're agreeing that the determination of dischargeability is bound up in the sanctions determination. You're conceding that point? No. No, I'm not, Your Honor. Well, then you're going to have to deal with the Taggart case. Yeah. So Taggart v. Lorenzen, the— Supreme Court's case that discusses the standard for contempt and what sanctions— Whether there's an objectively reasonable basis. Right. That's all bound up with the merits of the dischargeability issue. Your Honor, so Taggart still has to be litigated as to what the meaning of objectively reasonable basis is, but I don't think that that's the same as a determination as to whether the debt was, in fact, discharged. Whether there's an objectively reasonable basis could be that there was a reasonable basis in the law to come to the conclusion that the court did. Right. That's my point. It's all bound up in the same dispute. Would you agree that the appropriateness of sanctions here is the central issue in this case? Your Honor, all that the parties— It's really a yes or no response. No, the central question here is dischargeability, which is what the parties have briefed. And sanctions will be determined if the court were not to rule in favor of the state on the merits. Right, but the dispute is about whether the university should be sanctioned for violating the injunction, the discharge injunction, and that dispute has several components. One is the dischargeability issue, and two, whether the university's position was objectively reasonable under the law. That's what Taggart says. And then three, if you do owe sanctions or your client does owe sanctions, what their scope should be. And the bankruptcy court has broad equitable discretion to fashion a remedial order that includes many different rules, rationale. Let me try also. The dischargeability issue is related to the sanctions issue, which is the heart of this case, rather than a separate issue. It is not a standalone claim at all, but rather a factor underlying the sanctions determination. And in that context, jurisdiction isn't proper until the entire issue can be appealed after the bankruptcy considers the sanctions issue, and that's the law. Your Honor, you're correct that the state agrees that the dischargeability issue in this case is related to sanctions, but the key is that the dischargeability issue is not, or the dispute is not dependent on sanctions. It's an independent determination that the court could make. There is case law, mainly in the 1291 context, but courts have also applied it in bankruptcy court contexts, where if there remains issues to be decided related to attorney's fees, which is arguably a form of sanctions, that doesn't render the merits decision. Attorney's fees are very different. They're not sanctions. But it is one form of relief that the debtor has asked for in this case. So I think that that is an analogy that could be made here. This is tantamount to an appeal of a liability ruling before damages are determined. That would never be allowed. Okay. Well, as we said, we believe that there is jurisdiction here, but we flagged it for the court. Well, believe away. Well, there's two minutes left. I'd like to reserve my time for rebuttal. Thank you. Good morning. Excuse me. My name is Josh Christensen, and I represent the appellees, Richard Hazleton and Kelly Hazleton, in this matter. May it please the court. Your Honors, addressing the issue of jurisdiction, as I know that is foremost on your mind, again, I cannot be impressed enough with the similarities between this case and the hypothetical that was illustrated in the Anderson matter. Where the order of the bankruptcy court was a final order, but the order of the district court was not. In this case, where the Hazeltons moved for sanction, the bankruptcy court decided that the debt was not discharged and therefore denied sanctions. That would have been a final order of the court. In this matter, then Hazeltons appealed. The district court reversed the bankruptcy court. And said that the debt was discharged and remanded back to the bankruptcy court for the litigation of the damages, for the litigation of the proper sanction. And in that matter, there is still work left to be done on the matter. And therefore, taking a position, I believe, is not a final order. And therefore, this matter is not properly before this court. But moving on to the issue of dischargeability. There are two theories under which the state asserts that this matter should be discharged. The first is under 523 sub 8 sub a sub 1. And this is relating to an educational loan. And the language that's retained in this statute, of course, was modified in 2005. But still contains very many similarities with the language that existed when this court decided Chambers. And I think that the facts behind the two cases are very similar. So in this present case, I think that there's three reasons why the matter, that the agreement that Hazleton signed is not an educational loan and cannot be held to be a loan. The first is that there was no extension of the obligation to pay. The matter was decided by the bankruptcy court without taking any testimony, without reviewing evidence. I suppose we could either call it a motion to dismiss or a motion for judgment on the pleadings. And in either case, the facts before the bankruptcy court, before the district court, before this court, is that in summer session of 2015, classes began June 8th and July 6th. Tuition would have been due July 15th under a normal billing process that UW Stout has. However, this agreement calls for tuition to be due one week after the beginning of these classes. So that would be respectively June 15th and July 13th. So under the agreement, the tuition for summer session 2015 is due before it would have been due without the agreement. I think then, therefore, this is clearly not an agreement to extend the obligation. There's no extension of time in which the debtors could pay. Then I believe that this can also not be said to be a loan as UW Stout reserves the right to change this agreement at any point. Paragraph 7 of the agreement simply states that UW Stout can mail the Hazleton's notification that they're changing the agreements any way that they want to. And then that change in the terms would apply retroactively to any debts that had already been incurred. I hope I didn't miss it, but why should the language, any other educational loan that is a qualified education loan, be construed as a two-part test? Why shouldn't we read the plain language as indicating that qualified education loan is a subcategory of education loan, such that if it meets the definition of a qualified education loan, it necessarily is an education loan? That's a good question, Your Honor. Oh, thank you. And I believe that I can best address that question by perhaps addressing a different portion of it. I think that that question is well-founded, and I don't know that I have a good answer for it, but I can respond in another way in regard to subsection B. All right. So subsection B, I believe that the best way to look at subsection B for the Hazleton's is that there are two other parts to subsection B. The first is that there is the qualified higher education expenses, which is referenced under 221 sub D sub 2, I believe it is, of the Internal Revenue Code. And then it's those qualified higher education expenses, which then need to, excuse me, then there needs to be an indebtedness incurred in order to pay those higher, qualified higher education expenses. I believe that the Board of Regents interpretation is that any qualified higher education expenses aren't necessarily a qualified education loan. It's my assertion that that indebtedness, the qualified education loan, needs to be incurred in order to pay the expenses. The expenses themselves are not the loan. The clear language, the unambiguous language of 221 sub D sub 1 does contain pay. It refers to several instances of incurred, number one, incurred the indebtedness and then incurred the debt itself, the education expenses. So there needs to be two separate incidences there, two separate actions. To read that there could only be one, or that might be possible for there only to be one occurrence of debt, I think renders a good portion of subsection D, subsection 1, completely superfluous. The subsection D, subsection 1, sub A and sub B both use the incurred language twice. And... So under your interpretation, the payment plan for the fall and spring semesters would constitute a qualified education loan if she had defaulted and if this suit was about that or if this case was about that? Perhaps. I did not address that since there's no allegation that these debts relate to anything other than summer semester. So I think that this matter can be decided much more narrowly. So arguably it might, but we don't have to decide that here. Yes, Judge. Because there's no question that subsection B was intended to broaden the definition of education loans. Yes, Judge. To include everything that's within that IRS subsection. Yes. And then on a similar point there, the Board of Regents argues that the Hazelton's interpretation renders the entire subsection B superfluous because if the state grants that type of a loan, well it's already covered under sub A, sub 1. But I would assert that BAP CPA in 2005 expanded the scope of the loans that are covered under this new subsection B to include private loans. So even under the Hazelton's interpretation, there is no superfluous language here. Subsection A, subsection 1 still refers to an educational loan, which is either guaranteed or made directly by a governmental unit. Subsection B expands to that non-dischargeability to private loans as well. So there is no superfluidity there. And then the last point I'd like to make is going back to subsection A, subsection 1. I again would assert that the agreement that was signed in 2008 could not be said to specifically acknowledge the debt that was incurred seven years later in 2015. There was a multiple-year-long break in Hazelton's enrollment during that time, and seven years is just simply too long for that to apply. Thank you for your consideration. Thank you. Ms. Vander Meus. Yes, thank you. Just a few points on rebuttal. Briefly, Ms. Hazelton points to the Anderson case as analogous to this case for establishing jurisdiction. We don't think that that case is analogous. The remand was for the same dispute. We've already discussed that. We just don't think that that case is on all fours. A couple points on the merits. The state disagrees that you need to have a common law definition of educational loan in subsection B because that subsection has its own definition of loan. If you meet the IRC's definition of qualified education loan, then you meet the standard under that dischargeability exception, and we've briefed that issue and explained why that is met, and I don't think that it's in dispute that the educational expenses were qualified educational expenses in this case. But there is a dispute about whether the payment plan, as it pertained to the summer tuition expenses, which are the only thing that's at issue here, was really an extension of credit at all. And that goes to whether it would meet the requirements of A1. Well, no, it also goes to the requirements of the IRS definition because the indebtedness has to be incurred by the taxpayer solely to pay qualified higher education expenses. If this wasn't a payment plan to extend credit for summer tuition expenses, then it wasn't a debt incurred to pay those expenses. It's just normal tuition. Well, in this case, Ms. Hazleton did incur indebtedness because she attended classes without paying tuition for a period of time, and that would meet the standard with or without the payment agreement. She did not incur indebtedness to pay the expenses. She just didn't pay the expenses. But the payment plan does show evidence of the deferred payment agreement. For fall and spring, not for summer. For summer as well. No, because the actual standard due date was later. The payment plan actually accelerated the payment. We disagree with that characterization of evidence, and it was also not in the bankruptcy court's findings, which were based on the undisputed facts. So we would disagree with that point. But I see that my time is up. Thank you. Thank you both very much. And the case will be taken under advice.